J-S02039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.L.D. | : | No. 1342 MDA 2019 |

Appeal from the Order Entered July 12, 2019
in the Court of Common Pleas of Centre County
Civil Division at No(s):  18-2865

BEFORE:  BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: MARCH 2, 2020**

D.L.D. appeals from the Order denying his Petition for Review of Certification for Extended Involuntary Emergency Treatment under Section 303 of the Mental Health Procedures Act (the "Act"), 50 P.S. § 7303.  We affirm.

D.L.D. was admitted, upon a warrant issued by the county administrator, to Mount Nittany Medical Center (the "Center") for involuntary treatment under Section 302 of the Act.  On July 8, 2019, following an examination by Melissa Pell, M.D. ("Dr. Pell"), a psychiatrist at the Center, the Center filed an Application for Extended Involuntary Treatment pursuant to Section 303 of the Act.

A Mental Health Review Officer (the "Officer") conducted a hearing on July 9, 2019, during which Dr. Pell testified.  The same day, the Mental Health Review Officer issued a Report stating its conclusions that D.L.D. is severely mentally disabled and a danger to others, as well as its recommendation that

D.L.D. be committed to inpatient treatment for a period not to exceed 20 days. On July 11, 2019, the trial court entered an Order adopting the Officer's Report and ordering that D.L.D. be committed to inpatient treatment for a period not to exceed 20 days.

On July 12, 2019, D.L.D. filed a Petition for Review of Certification. The trial court reviewed the Petition and the audio recordings of the hearing held before the Officer, and denied D.L.D.'s Petition on July 15, 2019. D.L.D. filed a timely Notice of Appeal and a court-ordered Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

D.L.D. raises the following issue for our review:

> Whether the [Center] lacked sufficient evidence to involuntarily commit D.[L.]D. to involuntary psychiatric treatment[,] as it failed to present clear and convincing evidence that D.[L.]D. was severely mentally disabled and that he posed a clear and present danger of harm to himself and others; namely, whether there was a reasonable probability of death, serious bodily injury, or serious physical debilitation within 30 days unless D.[L.]D. was forced to undergo treatment, or that D.[L.]D. posed a clear and present danger to others such that within the past 30 days[,] D.[L.]D. had inflicted or attempted to inflict serious bodily harm on another and that there was a reasonable probability that such conduct would be repeated?

Brief for Appellant at 4.

D.L.D. first argues that there was insufficient evidence to establish that he posed a clear and present danger to others. *See id.* at 13-18. D.L.D. asserts that Dr. Pell broadly testified that D.L.D. was making threats, but she was unable to explain any of the alleged threats with specificity. *Id.* at 14. D.L.D. also claims that the Act requires the commission of an act in

furtherance of a threat, and that the record is devoid of testimony that he had committed any such act. *Id.* at 15, 17. While D.L.D. acknowledges the allegation that he had carried a knife, he argues that Dr. Pell could not identify whether this had occurred within the 30-day period prior to his commitment. *Id.* at 17.

Next, D.L.D. argues that there was insufficient evidence to conclude that D.L.D., himself, was at risk of death, serious bodily injury or serious physical debilitation. *See id.* at 18-22. D.L.D. contends that Dr. Pell could not articulate a specific basis for her belief that D.L.D. would pose such a risk to himself within 30 days. *Id.* at 20, 22. Additionally, D.L.D. points out that testimony concerning erratic behavior, which had been occurring for months, contradicts the alleged urgency of his condition. *Id.* at 21.

This Court reviews determinations under the Act to "determine whether there is evidence in the record to justify the court's findings. Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." *In re T.T.*, 875 A.2d 1123, 1126 (Pa. Super. 2005) (citations omitted).

The Act provides for involuntary emergency examination and treatment of persons who are "severely mentally disabled and in need of immediate treatment." 50 P.S. § 7301(a). As the Act explains, in relevant part,

> [a] person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a

clear and present danger of harm to others or to himself, as defined in subsection (b) ….

*Id.*

Regarding the requirement that the individual pose a "clear and present danger of harm," the Act provides, in relevant part, as follows:

**(b) Determination of Clear and Present Danger.--**

(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. … For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this [A]ct[.]

*Id.* § 7301(b).

Our review discloses that D.L.D. was initially admitted to the Center under Section 302 of the Act.[1] Then, upon Application of the Center, D.L.D.'s

---

[1] Relevantly, Section 302 permits confinement of a patient for involuntary emergency examination and treatment for up to 120 hours, upon a warrant issued by the county mental health administrator. *See* 50 P.S. § 7302(a), (d). D.L.D. does not challenge his Section 302 commitment on appeal.

involuntary commitment was extended for 20 days pursuant to Section 303,

which provides, in relevant part, as follows:

**§ 7303. Extended involuntary emergency treatment certified by a judge or mental health review officer--Not to exceed twenty days**

**(a) Persons Subject to Extended Involuntary Emergency Treatment.--**Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours.  The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary.  The application shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.

* * *

**(c) Informal Conference on Extended Emergency Treatment Application.--**

(1) At the commencement of the informal conference, the judge or the mental health review officer shall inform the person of the nature of the proceedings.  Information relevant to whether the person is severely mentally disabled and in need of treatment shall be reviewed, including the reasons that continued involuntary treatment is considered necessary.  Such explanation shall be made by a physician who examined the person and shall be in terms understandable to a layman.  The judge or mental health review officer may review any relevant information even if it would be normally excluded under rules of evidence if he believes that such information is reliable.  The person or his representative shall have the right to ask questions of the physician and of other witnesses and to present any relevant information.  At the conclusion of the review, if the judge or the review officer finds that the person is severely mentally disabled and in need of continued involuntary treatment, either as an inpatient or through less restrictive assisted outpatient treatment, he shall so certify.

- 5 -

> Otherwise, he shall direct that the facility director or his designee discharge the person.

50 P.S. § 7303(a), (c)(1) (footnote omitted). "[A] patient may not be confined under section 303 on a showing of less than clear and convincing evidence." *In re R.D.*, 739 A.2d 548, 555 (Pa. Super. 1999) (citation and quotation marks omitted).

During the hearing before the Officer, the Center presented the testimony of Dr. Pell, the psychiatrist who had examined D.L.D. Dr. Pell stated that D.L.D. suffers from schizophrenia, and had been hospitalized for psychosis on multiple occasions. N.T., 7/9/19, at 7. Dr. Pell testified that D.L.D. was unable to provide for his own basic needs, and provided the following explanation:

> [D.L.D.] presented [at the Center] after a period of several months of decompensation of his mental illness, as outlined in a very detailed way by his forensic case manager. [D.L.D.] has been completely uncooperative since he arrived here with assessments. Will not answer questions, will not tell us where he's been living, if he has any outpatient treatment providers, would not sign releases for his parents, who actually did attempt to visit him last night and informed staff that he had been living with them, but had been missing for an unknown amount of time.

> [D.L.D.] presented [at the Center] with psychotic symptoms, including paranoia, delusions, had been stating that the government was out to get him. Had … come into contact with police and crisis workers numerous times in the past few weeks, due to his erratic behavior in the community and had made threats to multiple individuals at the [c]ounty [c]ourthouse. [D.L.D. h]ad been asked to leave multiple local businesses due to his threatening and aggressive behavior. And had been aggressive with [his] parents at home. There is information in this [P]etition that police reported [that D.L.D.] was found

carrying a knife and that he went to the Sheriff's Office to get an application for a firearm.

[D.L.D.] has been advised in the past to be put on a long-acting injectable antipsychotic, due to his history of noncompliance with treatment, which he has refused. [D.L.D.] has been behaving in an agitated manner in the hospital. He had to be advised by the hospital to stop calling because he had been calling repeatedly[,] asking for controlled substances. [D.L.D.] has been resistant to taking antipsychotic medication [at the Center] and saying he doesn't need to be [at the Center] and wants to leave.

[D.L.D. has] had inappropriate and intimidating hostile behavior with female peers and with staff here, and has not been appropriate to have a roommate or to attend groups or therapy.

*Id.* at 7-9; *see also id.* at 10 (indicating that D.L.D. had shown no willingness to engage in treatment), 11 (wherein Dr. Pell testified that D.L.D. was "very resistant" to taking his prescribed medications, and that he agreed to take his antipsychotic medication only because he wanted the benzodiazepines that had been prescribed with it).

According to Dr. Pell, as a result of his mental illness, there was a reasonable probability that D.L.D.'s behavior would lead to death, disability or serious physical debilitation within 30 days. *Id.* at 9. Dr. Pell additionally agreed that inpatient treatment, for a period of 10 to 20 days, would be the least restrictive environment in which D.L.D. could receive necessary and appropriate treatment. *Id.* at 10-11.

The Application for Extended Involuntary Treatment alleged that D.L.D. was in a state of deterioration, and that he was a danger to himself because he was unable to provide for his basic needs (*i.e.*, housing, nutrition,

medication, and mental health treatment).  Application, 7/8/19, at 2.  Dr. Pell likewise testified, as set forth more fully above, that D.L.D. was unable to care for these basic needs without care and assistance.  *See* N.T., 7/9/19, at 7. The Officer and the trial court each stated their agreement that, based on Dr. Pell's testimony, D.L.D. was severely mentally disabled and in need of extended involuntary treatment.  Report, 7/9/19, at 1-3 (unnumbered); Trial Court Opinion, 9/23/19, at 1, 3.

Upon review, we conclude that there is clear and convincing evidence of record to establish that D.L.D. was a danger to himself pursuant to 50 P.S. § 7301(b)(2)(i).  Thus, we conclude that the trial court properly certified D.L.D.'s involuntary treatment under Section 303 of the Act.  We therefore affirm the Order denying D.L.D.'s Petition for Review.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/02/2020